PICKARD, *et als.* v. PETERS, USE, &c.

1. When the sheriff demands a bond of indemnity from the plaintiff in execution, which is not given, he may deliver the property levied on to the person from whose possession it was taken, but if he does not do so, but retains it, the lien continues.

2. Where, upon the refusal of the plaintiff in the senior execution to indemnify the sheriff, on his demand, the plaintiff in a junior execution gives the necessary bond, the levy of the senior execution is discharged, and the lien transferred to the younger execution.

3. Property levied on may be sold after the return day of the execution, by the consent of the defendant, without a *venditioni exponas*.

4. Upon a motion to the Court to direct the application of money in the hands of the sheriff, if there is no controversy about the facts, there is no necessity for impannelling a jury.

Error to the Circuit Court of Tallapoosa.

THIS appears to have been a motion in the Court below, to direct the coroner, (there being no sheriff) in the application of money, in a contest between the parties to two executions which were in his hands at the time the money was made, which was not sufficient to satisfy both. The motion, which the coroner acknowledged to have notice of, was in these words:

John H. Peters, use, &c. v. M. M. Cravens, James Young, M. T. Ellis and H. C. Townes.

In this case, the plaintiff moves the Court for an order on the coronor, H. J. Pickard, to pay over to the plaintiff the amount of money levied under the plaintiff's execution, the plaintiff having a superior lien to others on which the coroner, seeks to appropriate the funds. I acknowledge due service of this motion. H. J. PICKARD.

The facts set forth in a bill of exceptions were, that the coroner had two executions against the same defendants, in favor of different plaintiffs, both of which were levied on a negro girl with other property; that of the defendant in error having been first received by him. It also appeared that after the levy, the coroner required from the defendant in error, a bond of indemnity to sell the slave, which was refused.

On the 5th October, 1841, after the return day of the *fieri facias*, by " agreement, between the defendant in the execution and the coroner, the slave was sold at auction without a bond of indemnity, and the money applied to the younger execution, neither levy having been discharged." The coroner on the day of the sale indorsed on the younger execution, "satisfied in full by sale of slave Maria."

Under this state of facts, the Court decided that the money for which the negro sold, should be applied to the elder execution, and that the coroner was liable to the plaintiff for the same, on this motion, after which decision, he endorsed on the junior execution "appropriated this money by order of Court, to an older execution in favor of John H. Peters, use," &c. The defendant excepted to the opinion of the Court.

A judgment was afterwards entered up against the coroner and his sureties on his official bond in favor of the plaintiff in the senior execution for the amount for which the slave sold.

From this judgment the coroner and his sureties prosecute this writ of error, and now assign for error:

1. The matter contained in the bill of execeptions.

2. That no notice was given to the parties below.

3. That the case was decided without the intervention of a jury.

Heydenfeldt, for the plaintiff in error.

Baylor, contra.

ORMOND, J.—If there was any assignment of error bringing to our notice the judgment of the Court against the coroner and his *surities*, there can be no doubt that the judgment there rendered would have to be reversed, as no notice appears to have been given to the coroner, which would authorise a judgment against his sureties. It is, to be sure, assigned for error that notice was given to the parties below, but it is not necesary that notice should be given to the sureties, as has been repeatedly held in this Court; if the sheriff has been duly notified that a motion will be made against him and his sureties, it will sufficient, according to the express directions of the statute.

Here, the coroner was notified that a motion would be made against him, not under the statute for failing to pay over the

money, which he appears to have been perfectly willing to pay, provided he could do it with safety, but addressed to the extraordinary power of the Court in the supervision of the conduct of its own officer. In such a proceeding, the sheriff is a mere stake holder, the true parties litigant, are the plaintiffs in the rival executions. It is therefore most obvious, that a notice of a motion of this character, will not authorize a judgment against the sheriff and his sureties, and although a judgment by mistake, or for some reason which does not appear, was finally rendered against the coroner and his sureties, *they were not the parties below.*

We come now to consider the judgment of the Court on the facts, which was doubtless what was intended to be presented for revision in this Court. The first question is, whether the refusal of the plaintiff in the senior execution to give a bond of indemnity, on the demand of the coroner, discharged the levy, or precluded the plaintiff from afterwards insisting on the money arising from a sale of the slave.

The sheriff has the right, where a doubt arises, whether, after a levy, the right of the property is in the defendant in execution, to demand from the plaintiff in execution, a bond of indemnity, to protect him in the sale of the property. If this bond is not given, the sheriff is justified in delivering the property to him from whose possession it was taken. Aik. Digest 167, § 43. A subsequent act, declares, that in such a case, where there is a senior and junior execution, that if the plaintiff in the former, refuse to execute the bond and the plaintiff in the latter consent to do so, the lien shall be divested in favor of the junior execution. Aik. Dig. 166 § sec. 39.

In this case, it appears that a bond was demanded by the coroner, of the defendant in error, and refused, but the coroner did not, as he then had the right to do, return the property to the person from whose possession he had taken it; nor did he demand from the plaintiff in the junior execution, a bond to indemnify, but as we must presume, retained both executions and the property in his hands, until after the return day; as it is stated, that neither levy had been discharged. As therefore, no action followed his demand of a bond of indemnity from the defendant in error, it cannot, that we can perceive, have any influence in this cause. If the coroner had, upon the refusal of

the defendant in error to give the bond, returned the property, that would have discharged the levy, or if the plaintiff in the junior execution had, upon the refusal of the defendant in error indemnified the sheriff that would have transferred the lien to the younger execution; neither having been done, the lien of the elder execution is perfect.

The question, whether property levied on can be sold after the return day of the execution, without a *venditioni exponas*, does not arise in this case. The question presented on the record, is not whether the property was legally sold, as it is shewn that the sale was by the consent of the defendant in execution without a bond of indemnity. It is not, to be sure, explicitly stated that the coroner made the sale in virtue of the levy, but that such was the fact, is quite clear from the statement that no bond of indemnity was required, and it is certain that the execution was not returned. If the sale had been made by the consent of the defendant in execution, without reference to either levy, there would have been no propriety or necessity of adverting to the fact that a bond of indemnity was not required.

This being then merely the case of a sale under a levy there being a prior lien by virtue of a previous levy, the judgment of the Court below, enforcing the lien of the senior execution was strictly correct.

It is no objection that the facts were not passed on by a jury. The question submitted to the Court, was not one of fact, but of law; it was not what acts were done by the coroner, but the legal consequences attending these acts.

Let the judgment be affirmed.