## BRANCH BANK AT MOBILE v. FORD.

1. A return of satisfaction, upon an execution made by the sheriff, by the directions of the plaintiff's agent, precludes the plaintiff from issuing another execution, upon the judgment, whilst the return continues in force, and discharges the *lien* of the execution, as against a purchaser from the defendant in execution, who bought *prior* to the return being made.

Writ of Error to the Circuit Court of Perry. Before the Hon. J. D. Phelan.

On the first day of October, 1846, a writ of execution, in favor of the bank, against James M. Harwood, William Ford, and Ennis Ford, defendants, was placed in the hands of the sheriff of Perry county, for $290 05, issued on a judgment rendered in the county court of Mobile, on the 17th of February, 1840. This *fi. fa.* was indorsed thus : "The judgment in this case is satisfied, as per David Chandler's receipt, lodged with me, dated 13th April, 1841. The sheriff will return this, for the branch bank will rule the sheriff, D. Chandler. Nov. the 3d, 1846. Hugh Davis, Bank Att'y."

That the sheriff of Perry returned this *fi. fa.* as directed on the 4th day of November, 1846. The receipt of Chan-

dler bore date when no valid execution was in his hands, nor any authority to receive the money on the judgment. Another execution was issued, on the same judgment, and came to the hands of the sheriff of Perry county, on the 23d November, 1846, which was levied on lands of Ennis Ford. This execution was returned without a sale of said land, to the February term of the county court, 1847. A *venditioni exponas* came to the sheriff's hands, on the first day of March, 1847, which was returnable to the second Monday of June; and on the 21st day of August, 1847, another *fi. fa.* was issued on the same judgment, which, on the — day of October, 1847, was levied on the slave claimed by the claimant, Ford. No execution was issued returnable to the June term of the county court, 1847, except the *venditioni exponas*. The claimant purchased the slave of Ennis Ford, on the 28th October, 1846, for a full and fair price, received a bill of sale for him, took possession, and retained that possession until the levy. The *bona fides* of the sale from Ennis Ford to Benjamin Ford, were admitted. These facts were all admitted, and the question of law submitted to the court, with an agreement, that a verdict and judgment should be entered, in conformity with the opinion of the court. The court decided the law in favor of the claimant Ford; whereupon, a verdict and judgment were rendered.

The bank here assigns as error, that the judgment of the court on the facts agreed, should have been for the plaintiff.

DAVIS, for plaintiff in error.

The questions are—1. Was the *lien* continued by the issuance of the *venditioni exponas* in the form thereof shown in the transcript.

2. Does the defendant, by his purchase, while the plaintiff's execution bound the slave, acquire a good title to the slave, by reason of the neglect to issue a *fi. fa.* as well as a *venditioni exponas*, between February and May terms of the court in 1847? Bacon's Abrid. Execution; Collingsworth v. Horn, 3 Stew. ——; 5 Ala. 59.

GARROTT, contra.

DARGAN, J.—The rule is so well established, that a claimant of property cannot be permitted to question the propriety of the judgment, or the regularity of the execution, that it is unnecessary to refer to the numerous decisions in support of it. A claimant shall not be permitted even to show the satisfaction of the judgment. But I understand this rule to be limited to this extent, that the claimant shall not sustain his claim by showing such defects or irregularities. In the case at bar, the title of the claimant is older than the *lien* of the plaintiff, unless the plaintiff can show, that his *lien* is older than the date of his execution, or the time when it came to the hands of the sheriff. If we look, therefore, to the date of claimant's purchase, and to the execution only, the property is not liable to the execution; the sale is admitted to be *bona fide.* The plaintiff, then, must show that his *lien* he is seeking to enforce, has an older origin than the claimant's purchase : he must show a valid subsisting *lien* against the slave, at the time of the sale from the defendant in execution, to the claimant. , The claimant has the right to controvert the existence of this *lien*, or to show that it has been lost. If this is not the law, then the trial of the right of property can never protect a purchaser from the defendant in execution, although the judgment may be ten years old, or the *lien* expressly abandoned. But all will admit, that if the title of the purchaser is older than the execution levied on the property, it is necessary that the plaintiff should go back, and show that he is prosecuting a *lien*, older than the claimant's title ; and if his proof should not show a valid *lien*, older than his title, he must fail. So, if his proof shows that his *lien* is lost.

The return made by the sheriff, on the execution delivered to him on the third of October, 1846, under the, directions of the bank attorney, is this : "The sheriff will return this execution, as the judgment is satisfied on which it issued, as per D. Chandler's receipt lodged with me, dated first April, 1841. The branch bank will rule the sheriff." This return was made on the fourth November, 1846. The title of the claimant bears date 28th October, 1846. What is the effect of this return ? In the case of Haden v. Walker, 5 Ala. Rep.

89, the return was, "the defendant in this case has settled with the plaintiff's attorney, as per his receipt;" and this court held this to be a return of satisfaction. The return in the case now before the court, must also be considered as a return of satisfaction. The execution, then, returned the fourth of November, 1846, is satisfied. Although this return was made under a mistake, yet it is well settled, that after it is made, an *alias* execution cannot be legally issued, without some action of the court amending the return, or setting it aside. See 1 Porter's Rep. 30; 5 Ala. Rep. 89. No action of the court has ever been had, to correct this return, and so far as the facts agreed show, it is still standing as the return. Can the *lien* of the execution *continue*, after the right to issue an execution is gone? That is, can it continue, so as to defeat a *bona fide* purchaser? An injunction bond discharges the *lien ;* so does a writ of error bond ; or if the plaintiff enter into a contract with the defendant, by which the right to issue execution is lost, the *lien* is lost with it. A *lien* is said not to be a title in, or to the thing, bound by it ; but a mere right to *subject the goods* to the payment of the debt. From its very nature, when the right to subject the thing to the payment of the debt is gone, and the *lien* is this mere right, of course the *lien* is gone.

We therefore come to the conclusion, that the plaintiff has failed to show an older *lien* than the title of the claimant, and consequently, the property is not subject to the execution, for it can only be subject to the execution, by showing, that the plaintiff was seeking by his execution, to enforce a *lien* older than the plaintiff's title. The judgment of the circuit court is therefore affirmed.